UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

EDDIE BUCHANAN                                                    PLAINTIFF

v.                                                    NO. 3:14-CV-610-CRS

THE UNITED STATES, et al.                                        DEFENDANTS

## MEMORANDUM OPINION

This matter is before the Court on Motion by the Defendant, the United States of America ("United States"), to Dismiss all claims against it in Plaintiff Eddie Buchanan's ("Buchanan") Amended Complaint (DN 1-3) pursuant to Fed. R. Civ. P. 12(b)(1). DN 5.  Fully briefed, the matter is now ripe for adjudication.  Having considered the parties' respective positions, the Court concludes that Plaintiff's negligence claim against the United States must fail for lack of subject matter jurisdiction.  For the reasons set forth below, the Court will grant the Defendant's motion for summary judgment.

## I.

Eric Claggett[1] ("Claggett"), is an Army Reserve Soldier assigned to the 312th Operations Company in Upper Marlboro, Maryland.  Plaintiff Buchanan is a fellow serviceman who resides in Tampa, Florida and is also involved, in some capacity, with the United States Army Reserve. DN 5-2.  Under military orders, both men attended Active Duty Training School ("ADTS") for thirteen (13) days in Fort Knox, Kentucky in 2012.  On the thirteenth (13th) day, Buchanan and

---

[1] Eric Claggett is no longer a party to this action per the Court's Order of Substituiton. DN 7.

Case 3:14-cv-00610-CRS-CHL   Document 12   Filed 04/30/15   Page 2 of 11 PageID #: 92

Claggett were involved in a motor vehicle accident, from which Buchanan suffered injuries. *Id*.
He has asserted claims against Claggett and others based on the following undisputed facts.

In March 2012, Claggett received orders in Marlboro, Maryland that he was to travel to Fort Knox, Kentucky for ADTS, then return to the location *where he entered ADTS duty* when his training concluded. DN 11-2. Claggett entered ADTS duty from his home in Maryland. DN 11-1. Once in Fort Knox, Claggett rented a motor vehicle for his travels on the base. *Id*. The Army Reserve Readiness Training Center, where the training was held, has no policy against its student renting vehicles while enrolled. *Id*. In fact, military students are only instructed that, if they choose to rent a motor vehicle, it must be at the expense of the renter or his or her military unit. *Id*. His military unit authorized and funded both pay related to the training and reimbursement for his airfare to and from the training. *Id*. Per his orders, Claggett attended training until May 18, 2012, the day of the incident in question. *Id*.; DN 11-2.

Buchanan also attended ADTS in Fort Knox on military orders. *See* DN 5-2. His orders similarly instructed him to attend the training, but then to return to his residence in Tampa, Florida when the training concluded. In fact, his "Request and Authorization for [Temporary Duty] Travel" specifically states that his "temporary duty"[2] related to the training included "travel time." *Id*. at p. 2. His training also ended on May 18, 2012, so he, along with two other ADTS military classmates, caught a ride to the airport with Claggett; Claggett drove "to permit [all of them] to catch flights to [their] home states, pursuant to [their] respective military orders." DN 11-1, p. 3. When Buchanan finally returned home after the incident in question took place, he submitted a travel voucher seeking reimbursement for his airfare and other travel-related expenses. DN 5-2. He confirmed on that voucher that his "mission [was] complete" when he returned to Tampa, Florida. *Id*. at p 7-8 (see code).

---

[2] TDY is short for temporary duty. *See* DN 5-2.

The incident itself occurred the morning of March 18. DN 11-1. After Buchanan and the others piled into Claggett's rental, Claggett refueled on the Fort Knox base and set out directly for the Louisville International Airport. *Id*. He drove onto US 31W North, then headed east on the Gene Snyder Freeway. *Id*. He had planned on exiting Gene Snyder onto Interstate 65 toward the airport, but his vehicle was involved in an accident near the Gene-Snyder-to-Interstate-65 exit. *Id*. Buchanan sustained injuries during the accident and alleges that his injuries occurred as a result of Claggett's negligence. DN 1-3. He resultantly filed a negligence action in Jefferson County Circuit Court, naming Claggett, USAA Casualty Insurance Company, and EAN Holdings LLC as defendants. *Id*.

When the United States Attorney for the Western District of Kentucky became aware of Buchanon's state court action, he issued a certification stating "that the Office of the United States Attorney ha[d] reviewed the available facts in this matter [and concluded that] Claggett . . . was acting within the scope of his employment with the United States Department of the Army, at the time of conduct alleged in [Buchanan's] complaint." [3] DN 1-2. The matter was then removed to this Court at the United States' request and pursuant to 28 U.S.C. § 2679, 1442, 1442a, and 1446. DN 1. The United States then filed a Notice *of Substitution* with this Court for the purposes of entering the action in lieu of the individually named defendant Claggett under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 1346(b); 2671-2680 (1988), as amended by the Westfall Act. DN 4. The United States then filed this Motion to Dismiss for Lack of Subject

---

[3] Section 6 of the Federal Employees Liability Reform and Tort Compensation Act provides that certification should be given by the Attorney General, or his designate. 28 U.S.C. § 2679(d)(1),(2); *see also Dolan v. United States*, 514 F.3d 587, 592 (6th Cir. 2008). Here, the Attorney General has delegated certification authority to the Assistant Attorney General in charge of the Civil Division, 28 C.F.R. § 15.3 (1990), and the Assistant Attorney General in charge of the Civil Division has delegated certification authority to the various United States Attorneys. Appendix to 28 C.F.R. § 15.3 (1990).

Matter Jurisidiction. DN 5.   We have since substituted the United States into this action and terminated Claggett as a defendant. DN 7.

## II.

Fed. R. Civ. P. 12(b)(1) motions to dismiss based upon subject matter jurisdiction generally come in two varieties: *facial* attacks and *factual* attacks. *RMI Titanium Co. v. Westinghouse Elec. Corp.*, 78 F.3d 1125, 1134 (6th Cir. 1996).   A *facial* attack merely questions the sufficiency of the pleading.   In reviewing a *facial* attack, a trial court takes the allegations in the complaint as true.   But, as here, when a court reviews a complaint under a *factual* attack – when the facts presented give rise to a factual controversy – no presumptive truthfulness applies to the plaintiff's factual allegations. *Id*.   The court must therefore weigh the conflicting evidence to arrive at the factual predicate that subject matter jurisdiction exists or does not exist.

The burden of proving jurisdiction in order to survive the motion, however, is ultimately on the plaintiff. *Id*.   And in reviewing a *factual* attack, the trial court has wide discretion to allow affidavits, documents, and even a limited evidentiary hearing to resolve disputed jurisdictional facts. *Ohio Nat. Life Ins. Co. v. United States*, 922 F.2d 320, 325 (6th Cir. 1990).   Additionally, unlike with a Fed. R. Civ. P 12(b)(6) motion, the use of such outside documents to resolve a subject matter jurisdiction dispute does not convert the motion into a Fed. R. Civ. P 56 motion for summary judgment. *Ohio Nat.*, 922 F.2d at 325.   "Perhaps even more importantly, when a Rule 12(b)(6) motion is converted to a Rule 56 motion for summary judgment, the court, upon finding genuine issues as to material facts, must deny the motion; whereas on a Rule 12(b)(1) challenge to subject matter jurisdiction, the court is empowered to resolve factual disputes." *RMI*, 78 F.3d at 1134.   We have set out to resolve several factual disputes related to our jurisdiction here.

4

# III.

Before we turn to what the United States alleges are two grounds for dismissal – lack of subject matter jurisdiction due to: 1). the *Feres* doctrine, and 2). Buchanan's failure to exhaust administrative remedies – we must address Buchanan's argument that substitution of the United States as a defendant in this was improper. If the Court finds that it acted appropriately in substituting the United States, we will then assess the merits of the United States' jurisdictional arguments.

## A. Propriety of Substitution

As detailed above, the United States Attorney's certification that Claggett was acting within the scope of his employment triggered our substitution of the United States for Claggett as a defendant in this action. DN 4, 7; 28 U.S.C. § 2679(d)(1),(2); *see also Dolan v. United States*, 514 F.3d 587, 592 (6th Cir. 2008). Equally important, however, this certification also provides *prima facie* evidence that Claggett's conduct occurred "within the scope of [his] office or employment" and prompts initial application of the FTCA. *Dolan*, 514 F.3d at 593. Yet, the certification does not conclusively establish that substitution of the United States was correct, *Coleman v. United States*, 91 F.3d 820, 823-24 (6th Cir. 1996) (quoting *Gutierrez de Martinez v. Lamagno*, 515 U.S. 417, 434, 115 S.Ct. 2227, 2236, 132 L.Ed.2d 375 (1995)), and Buchanan may still challenge the propriety of the certification and, consequently, the substitution. *Gutierrez de Martinez*, 515 U.S. at 434. If Buchanan's challenge is successful, we must then *resubstitute* Claggett as a defendant, and the suit would proceed against him in his individual capacity, subject to a review of our subject matter jurisdiction. *See id*. at 434-36.

Procedurally speaking, a plaintiff challenging a certification decision must present evidence from which a district court could reasonably find that the defendant-employee acted

outside the scope of his employment. *Gilbar*, 108 F.Supp.2d at 816.  If a plaintiff produces such evidence, a district court must conduct an evidentiary hearing in order to determine the propriety of the certification and substitution. *Rutkofske v. Norman*, No. 95–2038, 1997 WL 299382, at *4 (6th Cir. June 4, 1997); *Id.*  But an evidentiary hearing is only necessary to resolve *disputed issues of fact*; in other words, no hearing is required when the plaintiff's allegations, taken as true, fail to establish that the employee was acting *outside the scope of his or her employment*. *RMI*, 78 F.3d at 1143; *Neogen Corp. v. U.S. Dep't of Justice*, No. CIV A 05-506-JBC, 2006 WL 3422691, at *3 (E.D. Ky. Nov. 28, 2006).  This is the situation before the Court.  For, not only does United States Attorney's certification constitute *prima facie* evidence the Claggett acted within the scope of employment, the United States has come forth with facts supporting the certification that Buchanan has utterly failed to rebut, with allegations or otherwise.

We look first to the United States' evidence and evaluate it in light of Kentucky's scope-of-employment jurisprudence. *Coleman v. United States*, 91 F.3d 820, 823 (6th Cir. 1996).  To determine whether a particular employee action occurred within the scope of employment, Kentucky Courts consider the following:

> (1) whether the conduct was similar to that which the employee was hired to perform; (2) whether the action occurred substantially within the authorized spacial and temporal limits of the employment; (3) whether the action was in furtherance of the employer's business; and (4) whether the conduct, though unauthorized, was expectable in view of the employee's duties. *Flechsig v. United States,* 991 F.2d 300, 303 (6th Cir.1993); *Frederick v. Collins,* 378 S.W.2d 617, 619 (Ky.Ct.App.1964); *Wood v. Southeastern Greyhound Lines,* 302 Ky. 110, 194 S.W.2d 81, 83 (1946).

*Id*. And here, the United States has shown that Claggett's military orders expressly directed him to attend training at Fort Knox and to return to his duty station in Maryland afterwards.  The accident occurred while he was on military duty, during his transit to the airport at the conclusion of his training.  He was paid for this time, and his use of a rental vehicle to reach the airport did

not vary from his orders.  His purpose for renting a vehicle and only reason for being on the Gene Snyder Freeway was too "comply with [his] military orders that required [him] to return to Maryland by way of air transportation paid by the Army." DN 11-1.  Simply put, he was on military travel orders and became involved in an accident during the course of carrying out those orders.  Claggett's act of driving to the airport while on military duty, therefore: 1). was work he was hired to perform, 2). was entirely within the limits of his employment, 3). furthered his employer's business to the extent that following any order furthers the Army's business, and 4). was an expected part of his return to Maryland.  In a word, we agree with our sister court's proclamation that a serviceman like Claggett is "acting within the scope of his employment at the time of [an] accident [if] he [is] travelling directly from one military station to another pursuant to military travel orders." *Provost v. Smith*, 308 F. Supp. 1175, 1181 (E.D. Tenn. 1969).

What is more, Buchanan has done nothing to rebut the United States' showing.  Indeed, he has requested an opportunity to conduct discovery on this issue based on his allegation that Claggett acted outside his employment because he "rented a motor vehicle, in his own name, and was driving to the airport to go home." DN 9, p. 4.  But in order to obtain discovery on the scope-of-employment issue, a plaintiff must put forth facts which, if proven, would rebut the United States' arguments. *See Davey v. St. John Health*, 297 F. App'x 466, 470 (6th Cir. 2008); *Stokes v. Cross*, 327 F.3d 1210, 1216 (D.C.Cir. 2003); *Davric Maine Corp. v. U.S. Postal Serv.*, 238 F.3d 58, 68 (1st Cir. 2001); *Brumfield v. Sanders*, 232 F.3d 376, 380 (3d Cir. 2000); *Gutierrez de Martinez v. Drug Enforcement Admin.*, 111 F.3d 1148, 1155 (4th Cir. 1997); *Brown v. Armstrong*, 949 F.2d 1007, 1012 n. 9 (8th Cir. 1991).  Buchanan's allegations, however, are entirely consistent with the United States' arguments, as the United States has explained: Claggett rented a motor vehicle because of, and in furtherance of, his military travel orders. DN

11.  Because Buchanan and the United States evidently do not have a different understanding of the facts, it would be inappropriate for us "permit additional discovery." *See Bradshaw v. Jayaraman*, 205 F.3d 1339 (6th Cir. 1999); *Singleton*, 277 F.3d at 871 (citing *Brumfield v. Sanders*, 232 F.3d 376, 380 (3d Cir.2000)).   Had Buchanan alleged facts that are both inconsistent with the United States' factual assertions *and* that tend to show that Claggett acted outside the scope of employment, we would permit discovery on this issue. *See id*.   But Buchanan has failed to do so.

In sum, Buchanan has failed to meet his burden in challenging the certification, and we find that Claggett's conduct occurred in the scope of his employment as a matter of law.  *See, e.g.*, *Henson v. Nat'l Aeronautics & Space Admin.*, 14 F.3d 1143, 1147 (6th Cir.) *opinion corrected on reh'g*, 23 F.3d 990 (6th Cir. 1994).   Consequently, the Court will not disturb the United States' substitution.

### B.  Grounds for Dismissal

As explained above, one effect of our substitution of the United States is that Buchanan's claims against it are now claims under the FTCA and subject to the FTCA's requirements. *See Dolan v. United States*, 514 F.3d 587, 593 (6th Cir.2008); *Vaughan v. United States*, No. CIV.A. 3:10-54-DCR, 2012 WL 6048699, at *3 (E.D. Ky. Dec. 5, 2012).   While the FTCA allows the United States' to be sued for "tort claims, in the same manner and to the same extent as a private individual under like circumstances. . . ," 28 U.S.C. § 2674; *see also* 28 U.S.C. § 1346(b)(1), such claims may still be barred for other reasons – pertinent here, either under the *Feres* doctrine or because the plaintiff failed to exhaust his administrative remedies. *Mackey v. United States*, 226 F.3d 773, 776 (2000); 28 U.S.C. § 2675(a); *Bumgardner v. United States*, 2012 WL 858647, *2 (6th Cir.2012).   The United States contends that Buchanan's claim against it should be barred

for either reason.   Under either principle, it argues, Buchanan's claim must fail for lack of subject matter jurisdiction.  The Court agrees.

### 1. *Feres* Doctrine

Under the *Feres* doctrine, "the Government is not liable under the [FTCA] for injuries to servicemen where the injuries arise out of or are in the course of activity incident to service." *Feres v. United States*, 340 U.S. 135, 146, 71 S.Ct. 153, 95 L.Ed. 152 (1950).  In a case applying the doctrine, the Supreme Court explained that "a service member is injured *incident to service*" if the injury is merely "because of his military relationship with the Government." *United States v. Johnson*, 481 U.S. 681, 689, 107 S.Ct. 2063, 95 L.Ed.2d 648 (1987) (emphasis added).  The Sixth Circuit has described the evolution of the "injured incident to service" concept as follows:

> Review of [] Supreme Court precedents makes it clear that in recent years the Court has embarked on a course dedicated to broadening the *Feres* doctrine to encompass, at a minimum, all injuries suffered by military personnel that are *even remotely related* to the individual's status as a member of the military, without regard to the location of the event, the status (military or civilian) of the tortfeasor, or any nexus between the injury-producing event and the essential defense/combat purpose of the military activity from which it arose.

*Major v. United States*, 835 F.2d 641, 644–45 (6th Cir.1987) (emphasis added).  The doctrine has taken on such breadth because "[s]uits brought by service members against the Government for service-related injuries could undermine the commitment essential to effective service and thus have the potential to disrupt military discipline in the broadest sense of the word." *United States v. Johnson*, 481 U.S. 681, 691 (1987).

Here, the United States has shown that, pursuant to military orders, Buchanan traveled from Tampa to Fort Knox for training, and that the same orders instructed him to return to his residence in Florida when his training concluded. DN 5-2.  It has also shown that Buchanan sought and received reimbursement for his travel to and from Fort Knox on a "Request for Official Travel" form and that he was considered, in military terms, to be on "temporary duty"

until he returned to Tampa. *Id*.   Buchanan himself, moreover, indicated on his reimbursement form that his "mission" was only "complete" once he returned to Tampa. DN 5-2.   From these facts, we conclude that any injuries suffered on Buchanan's ordered travel occurred "because of his military relationship with the Government" and are, at a minimum, "remotely related to [his] status as a member of the military."

This strong showing is then bolstered by the fact that Buchanan has not commented on the issue of whether Buchanan was injured incident to his service. *See* DN 9.  Because Buchanan has the burden of establishing subject matter jurisdiction by a preponderance of the evidence, we will grant the United States' motion to dismiss on these grounds.

## 2.  Failure to Exhaust Administrative Remedies

Dismissal of Buchanan's negligence claim against the United States is also appropriate based on his failure to exhaust administrative remedies.  The declaration of Connie McConahy, Acting Chief of the Operations and Records Branch of the United States Army Claims Service, states that she has access to records of all claims against the U.S. for which the Army has investigative responsibility, including claims under the FTCA. DN 5-3.  She also explains that her thorough search of all records available to the Claims Service revealed no administrative claims filed by Buchanan. *Id*.  Because Buchanan has offered no evidence to the contrary, we must also dismiss his negligence claim against the United States for failure to exhaust his administrative remedies. *See* 28 U.S.C. § 2675(a).

**IV.**

For the reasons set forth herein, we will grant the Defendant United States' Motion to Dismiss, DN 5, as to the negligence claim against it in Plaintiff Buchanan's Amended Complaint. DN1-3. A separate order and judgment will be entered this date in accordance with this Memorandum Opinion.

April 29, 2015

**Charles R. Simpson III, Senior Judge**
**United States District Court**